UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARINA FOCACCIA & CUCINA ITALIANA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 700 VALENCIA STREET, LLC, <br><br> Defendant. | Case No.  15-cv-02286-JCS |
| 700 VALENCIA STREET, LLC <br><br> Plaintiff, <br><br> v. <br><br> FARINA FOCACCIA & CUCINA ITALIANA, LLC. ET AL., <br><br> Defendants. | Related Case No. 15-cv-04931-JCS <br><br> **ORDER DENYING MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS IN CASE NO. 15-CV-02286, DENYING MOTION TO REMAND IN CASE NO. 15-CV-04931 AND DENYING MOTION TO CONSOLIDATE** <br><br> Re: Dkt. No. 37 (Case No. 15-cv-02286); Dkt. No. 15 (Case No. 15-cv-04931); Dkt. No. 55 (Case No. 15-cv-02286); Dkt. No. 18 (Case No. 15-cv-04931) |

## I.   INTRODUCTION

The dispute in these related cases revolves around a commercial lease (the "Lease") between landlord 700 Valencia Street, LLC ("700 Valencia") and tenant Farina Focaccia & Cucina, LLC ("Farina") for a restaurant property located at 702-706 Valencia Street, in San Francisco, California.  The Lease contains a five-year renewal option, which Farina alleges it timely exercised.  700 Valencia contends the option was not properly exercised and seeks possession of the property.  Each side has a laundry list of grievances relating to the conduct of the other in connection with the Lease.  Presently before the Court are the following motions: 1) 700 Valencia Street LLC's Motion to Compel Arbitration and Dismiss Claims ("Motion to Compel")

in Case No. C-15-02286 JCS ("Breach of Contract Action"); 2) 700 Valencia Street LLC's Motion to Remand ("Motion to Remand") in Case No. C-15-04931 JCS ("September 22 Unlawful Detainer Action"); and 3) Farina's Motion to Consolidate, filed in both the Breach of Contract Action and the September 22 Unlawful Detainer Action (collectively, the "Motions"). The Court finds that the Motions are suitable for determination without oral argument and therefore **vacates the motion hearing set for February 12, 2016 at 9:30 a.m. The Case Management Conference set for the same time shall remain on calendar.** For the reasons stated below, all three Motions are DENIED.[1]

## II.       PROCEDURAL BACKGROUND

The parties in these related cases have taken the Court on a procedural odyssey that began with Farina's filing of its complaint in the Breach of Contract Action, on May 21, 2015.[2] In the complaint, Farina asserted claims for: 1) Declaratory Relief; 2) Specific Performance of Written Contract; and 3) Breach of the Implied Covenant of Good Faith and Fair Dealing against 700 Valencia.

The next day, on May 22, 2015, 700 Valencia filed an unlawful detainer action against Farina in San Francisco Superior Court ("the May 22 Unlawful Detainer Action"). *See* Dkt. No. 9, Ex. A (Case No. C-15-02286 JCS). According to 700 Valencia, that case was stayed on the basis of a notice of removal filed by Farina in state court. Dkt. No. 25 (Case No. C-15-02286 JCS). Farina did not properly remove, however, filing a notice of removal in the Breach of Contract Action rather than removing the unlawful detainer case as a separate action. *See* Dkt.

---

[1]  All of the parties that have been served in the two related cases have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). In particular, the following parties have consented to the jurisdiction of the undersigned magistrate judge: Farina, Luca Minna and 700 Valencia. The following defendants in Case No. C-15-4931 have not consented to magistrate jurisdiction: James Kostelni, Lulu Holdings, Inc. and Global Trading and Marketing LLC. As those defendants have not been served, however, the Court has jurisdiction to rule on the pending motions. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action under 42 U.S.C. § 1983 as frivolous without consent of defendants because defendants had not been served yet and therefore were not parties).
[2]  The factual allegations in Farina's initial complaint are summarized in the Court's August 18, 2015 Order, Dkt. No. 30 (Case No. C-15-02286 JCS). Therefore, the Court does not repeat them here.

United States District Court
Northern District of California

No. 9 (Case No. C-15-02286 JCS).  Although the Court alerted Farina at the August 7, 2015 Case Management Conference that it had not properly removed the May 22 Unlawful Detainer Action, Farina did not remedy this deficiency.  The status of  the May 22 Unlawful Detainer Action in San Francisco Superior Court is unclear; the undersigned presumes that the stay is still in place and is unaware of any efforts on the part of 700 Valencia to lift the stay.

On June 12, 2015, 700 Valencia filed a motion to dismiss asking the Court to dismiss all of Farina's claims in the Breach of Contract Action on the basis that Farina was not in good standing in Delaware and/or California and therefore had no legal capacity to sue 700 Valencia.  Dkt. No. 10 (Case No. C-15-02286 JCS).[3]  Although Farina's counsel contacted 700 Valencia's counsel to inform him that it had taken measures to cure any problems with standing in Delaware, that it had paid the taxes it owed in California, and that the Delaware Secretary of State had reinstated Farina's LLC status before Farina filed its complaint, 700 Valencia refused to withdraw its motion, *see* Bohachek Decl., Dkt. No. 13 (Case No. C-15-2286 JCS).  The Court notes that although 700 Valencia terminated its prior counsel and retained new counsel after its motion to dismiss was filed, its new attorney declined to withdraw the motion and in fact, drafted the reply brief on the motion.  Farina, thus, was required to respond to the motion and also to provide supplemental materials after the reply brief was filed to provide information to the Court regarding its legal status as that information became available. *See* Dkt. Nos. 16, 27 (Case No. C-15-2286 JCS).

In the parties' July 31, 2015 Case Management Statement, 700 Valencia stated that it would likely file a motion to remand the Breach of Contract Action to state court on the basis that

---

[3] In its motion to dismiss, 700 Valencia incorrectly cited to Rule 17(b)(2) of the Federal Rules of Civil Procedure, which applies to corporations, rather that Rule 17(b)(3), which applies to unincorporated associations, including limited liability companies like Farina.  As a consequence, 700 Valencia's motion relied on Delaware's standing rules rather than California's.  700 Valencia's motion papers also contained factual errors.  For example, in support of its motion to dismiss, 700 Valencia offered as an exhibit a print-out that counsel states was downloaded from the Delaware Secretary of State's website on May 26, 2015, purportedly reflecting Farina's Delaware LLC status as of June 12, 2015, that is, more than two week in the future.  Greenquist Decl. at 2 & Ex. A, Dkt No. 10-1.  The numerous legal and factual errors in 700 Valencia's papers have created confusion and have made the job of this Court, and presumably Farina as well, more difficult.

United States District Court
Northern District of California

the parties were not diverse, and that it might also file a motion "to address the 'pending' nature" of the May 22 Unlawful Detainer Action.  Dkt. No. 25 (Case No. C-15-2286 JCS). It stated that if the Court were to find federal jurisdiction, 700 Valencia would likely bring a motion to consolidate the Breach of Contract Action with the May 22 Unlawful Detainer Action.  *Id.*  It further stated that it would, after discovery, bring a motion for summary judgment.  *Id.*  700 Valencia did not inform the Court (or Farina) that it intended to bring a motion to compel arbitration of the claims asserted in the Breach of Contract Action.  Nor did it inform the Court that the Lease contained an arbitration clause.

Farina stated in the July 31, 2015 Case Management Statement that it intended to bring a motion for summary judgment after it received responses to its Request for Production of Documents and Request for Admissions (which it had already served on 700 Valencia) and had had an opportunity to depose the agent for 700 Valencia, John O'Connor.  *Id.*  The parties stated that they had entered into a stipulation regarding discovery and would be exchanging documents and written responses within thirty days of the stipulation.  *Id*. In particular, 700 Valencia agreed to provide written responses to Farina's June 15, 2015 Request for Production of Documents and Requests for Admissions and Farina agreed to produce all documents required to satisfy the initial disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure.  *Id*.

At the August 7, 2015 initial Case Management Conference, 700 Valencia's counsel represented to the Court that it would work with Farina's counsel to get all of the parties' disputes "before the Court properly" so the case could "move forward."  Again, 700 Valencia's counsel made no mention at the Case Management Conference of its intent to seek arbitration as to any aspect of its dispute with Farina. Counsel and the parties agreed that mediation could occur within 90 days if an exchange of documents occurred within thirty days.  Based on the stipulation of the parties relating to discovery, the Court ordered that documents be exchanged informally within thirty days of the August 7, 2015 Case Management Conference. The Court also granted leave to Farina to file an amended complaint to add one additional claim.  700 Valencia did not object to Farina's request.  The Court set a further Case Management Conference for October 16, 2015.

On August 13, 2015, Farina filed its First Amended Complaint ("FAC"), adding claims for

Breach of Construction Contract/Construction Defects and Return of Security Deposits.  The

claim for Breach of Contract/Construction Defects is based on an oral agreement allegedly made

by the parties after they entered into the Lease relating to the construction of a restaurant facility,

with 700 Valencia promising to supply all labor and materials for the construction in return for

payments by Farina.  FAC ¶ 26.  Farina alleges that it subsequently discovered numerous

construction defects and that 700 Valencia has not fixed the defects.  *Id.* ¶¶ 27-29.   In the Return

of Security Deposits claim, Farina seeks the return of security deposits (in the total amount of

approximately $14,000) that it alleges it paid on behalf of individuals who leased two apartments

in the building and which were not returned when the apartments were vacated.  FAC ¶¶ 30-34.

According to Farina, it is a third-party beneficiary of the leases and therefore is entitled to assert a

claim to recover the security deposits it paid under those leases.  *Id.* ¶ 31.  In the prayer of the

FAC, Farina seeks, *inter alia*, damages, attorneys' fees and costs, declaratory relief that Farina has

lawfully exercised the option to renew under the Lease and that Farina is not in breach or default

of the Lease, and issuance of "a Temporary Restraining Order, preliminary Injunction and

permanent Injunction restraining and enjoining Defendant from filing unlawful detainer

proceedings."  FAC at 13-14 (Prayer).

On August 18, 2015, the Court denied 700 Valencia's motion to dismiss. The Court found,

*inter alia*, that 700 Valencia's motion to dismiss raised factual questions that could not be decided

on the pleadings.

On September 22, 2015, 700 Valencia filed a new unlawful detainer action in San

Francisco Superior Court ("the September 22 Unlawful Detainer Action").  700 Valencia added

four new defendants in that action in addition to Farina: Luca Minna, James Kostelni, LuLu

Holdings, Inc., and Global Trading and Marketing LLC.  In the September 22 Unlawful Detainer

complaint, 700 Valencia demands possession of the property located at 702, 704 and 706 Valencia

Street, as well as damages at a rate of $280/day (the fair rental rate of the property) starting May 1,

2015.  Notice of Removal, Exhibit A.  700 Valencia also requests reasonable attorneys' fees and

forfeiture of the agreement.  *Id.*

In the meantime, Farina's counsel was engaging in efforts to obtain the discovery promised

United States District Court
Northern District of California

1    by 700 Valencia in the Breach of Contract Action.  *See* Dkt. No. 39 (Case No. C-15-02286 JCS).

2    Under the parties' stipulation, the initial written responses from 700 Valencia were due on

3    September 7, 2015.  *Id*.  The parties were to engage in an initial exchange of documents on that

4    date as well.  Farina apparently produced the documents it promised by September 7.  700

5    Valencia also produced around 350 documents by the deadline, but its counsel informed Farina

6    that it would need an additional 30 days to provide written responses to the requests.  *Id*.  Farina's

7    counsel, in turn, informed 700 Valencia's counsel of his belief that the initial production of

8    documents was deficient in various respects.  *Id*.  Farina also served additional document requests

9    on 700 Valencia.  *Id*.  700 Valencia did not respond to the requests until October 8, 2015, when it

10   objected to all of Farina's requests on the basis that the Breach of Contract Action was subject to

11   arbitration.  *Id*.  At that point no motion to compel arbitration had been filed by 700 Valencia and

12   this was the first formal notice of 700 Valencia's intent to seek arbitration.[4]

13       The next day, on October 9, 2015, 700 Valencia filed the instant Motion to Compel.

14       On October 13, 2015, Plaintiff's counsel filed a letter brief highlighting Farina's concerns

15   relating to 700 Valencia's discovery responses.  *See id*.  Although Farina's counsel attempted to

16   meet and confer with 700 Valencia's counsel prior to filing the letter, his efforts to obtain a

17   response were unsuccessful.  *Id*.  In light of the scheduled Case Management Conference set for

18   October 16, 2015, Farina's counsel filed the letter brief without including 700 Valencia's

19   responses to Farina's objections.  At the October 16, 2015 Case Management Conference, the

20   Court instructed the parties to meet and confer in its jury room to resolve the discovery disputes

21   and the parties entered into an oral agreement ("the October 16 Discovery Agreement"),

22   memorialized in a letter by Mr. Bohachek, requiring certain discovery to occur within thirty days,

23   that is, by November 16, 2015.  *See* Dkt. No. 56-1 (Case No. 15-cv-02286 JCS) ("October 19

24   Letter").  Mr. Benjamin did not respond to Mr. Bohachek's letter.

25       On October 27, 2015, Farina removed the September 22 Unlawful Detainer Action to this

26

27   [4] Based on the letter filed by Farina's counsel on October 13, 2015, Dkt. No. 39 (Case No. C-15-
     02286 JCS), it appears that 700 Valencia's counsel told Farina's counsel for the first time that it
28   intended to seek arbitration at approximately the same time it provided its written responses, in
     early October.  *See id*.

6

1   Court on the basis of diversity jurisdiction.  *See* Dkt. No. 1 (Case No. C-15-4931).

2         On December 4, 2015, more than thirty days after it had received the notice of removal,

3   700 Valencia filed a Motion to Remand, seeking remand of the September 22 Unlawful Detainer

4   Action on the ground that the amount in controversy requirement is not met and therefore, there is

5   no diversity jurisdiction.

6         On December 14, 2015, Farina filed a Motion to Consolidate in the September 22

7   Unlawful Detainer Action and the Breach of Contract Action.  700 Valencia did not file a response

8   or a non-opposition as required under Civil Local Rule 7-3 within 14 days.

9         On December 15, 2015, the parties submitted a joint letter brief relating to the October 16

10  Discovery Agreement. In it, Farina's counsel asserted that 700 Valencia had failed to produce

11  many of the documents it had promised, while 700 Valencia's counsel told Farina's counsel, for

12  the first time, that he disagreed with Mr. Bohachek's characterization of the October 16 Discovery

13  Agreement in his October 19 Letter.  According to Mr. Benjamin, he "did not review this letter

14  when it was sent" because of the volume of emails Mr. Bohachek had sent in October (25), the

15  number of emails Mr. Benjamin receives on a daily basis (200 in the first two business days in

16  October), the fact that Mr. Bohachek did not copy Mr. Benjamin's assistant on the letter, and the

17  fact that Mr. Benjamin "has matters throughout the state and does not sit at a computer reading

18  emails all day."  Docket No. 56 (Case No. C-15-02286 JCS).  Even as to the categories of

19  documents Mr. Benjamin conceded 700 Valencia had agreed to produce, Mr. Benjamin now

20  argued, *inter alia*, that Farina's requests were "too burdensome and expensive" given that

21  "Defendant is a prominent real estate developer and property owner."  *Id*.

22        On December 21, 2015, the Court granted Farina's motion to compel, ordering 700

23  Valencia to produce several categories of documents, as well as written responses, that were the

24  subject of the parties' October 16 Discovery Agreement.

25  **III.     THE MOTION TO REMAND**

26       **A.     Contentions of the Parties**

27        700 Valencia contends the September 22 Unlawful Detainer Action must be remanded to

28  state court because the $75,000 amount in controversy requirement for diversity jurisdiction under

United States District Court
Northern District of California

1   28 U.S.C. § 1332 is not met.[5]  700 Valencia argues that in an unlawful detainer action, only the

2   right to possession (and not title) is at issue and therefore, the amount in controversy is only the

3   rental value for the period in which the defendant is in wrongful possession of the property.

4   Motion to Remand at 6-8.  Furthermore, subject matter jurisdiction is evaluated at the time of

5   removal, 700 Valencia contends.  *Id*.  In this case, the fair rental value for the period between May

6   1, 2015 and September 22, 2015 was under $40,000, according to 700 Valencia, well under the

7   amount in controversy requirement.[6]  *Id*.

8       700 Valencia further asserts Farina cannot satisfy the amount in controversy requirement

9   based on its attorneys' fees.  Reply at 5-6.  First, it contends the Court should not add attorneys'

10  fees into its calculation of the amount in controversy because subject matter jurisdiction is

11  evaluated at the time the complaint is filed.  *See Strotek Corp. v. Air Transport Ass'n of America*,

12  300 F3d 1129, 1133 (9th Cir. 2002).  Even if the Court were to consider future fees, 700 Valencia

13  argues that they would not allow Farina to reach $75,000 in controversy given the summary nature

14  of an unlawful detainer action.  *Id*. at 6.

15      700 Valencia rejects the argument it anticipates Farina will make that the value of the

16  option to extend the Lease for five years should be taken into account in determining whether the

17  amount in controversy requirement is met, arguing that Farina cannot establish subject matter

18  jurisdiction on the basis of defenses of counterclaims.  Motion to Remand at 8.  700 Valencia

19  further notes that counterclaims are not permitted in unlawful detainer actions.[7]  *Id*.

20

21  [5] 700 Valencia does not dispute that there is complete diversity of citizenship under Section 1332.
    [6] In fact, the fair rental value for this period (a total of 144 days) at the $280 rate claimed by 700

22  Valencia in its complaint is $40,320, that is, slightly *more* than $40,000.  700 Valencia apparently
    calculated the amount of holdover rent as "approximately $32,300" by miscounting the number of

23  days in this period as 115 days.  *See* Reply at 4.
    [7] 700 Valencia devotes the first two pages of the Motion to Remand to a lengthy recitation of

24  Farina's alleged misconduct in connection with the Lease, even though none of these allegations
    has any bearing on the issue raised by the Motion to Remand, namely, whether this Court has

25  subject matter jurisdiction over the September 22 Unlawful Detainer Action.  Counsel did not stop
    there.  700 Valencia also filed a request for judicial notice in which it asked the Court to take

26  judicial notice of six documents that have absolutely no relevance to the Motion to Remand.  Not
    surprisingly, 700 Valencia cites *none* of these documents in the substantive portion of its motion.

27  Because 700 Valencia's accusations were included in the Motion to Remand, however, Farina
    (understandably) felt the need to devote a portion of its opposition brief to countering these

28  accusations.  *See* Docket No. 19 (Case No. C-15-04931 JCS) at 7-11. The Request for Judicial
    Notice is DENIED.

United States District Court
Northern District of California

1    Farina argues that the September 22 Unlawful Detainer Action satisfies the amount in

2  controversy requirement because attorneys' fees incurred by Farina at the time it was filed must

3  also be considered; given that Farina had incurred $79,799 in attorneys' fees as of August 31,

4  2015, it argues, the amount in controversy requirement is met on the basis of attorneys' fees alone.

5  Opposition to Motion to Remand at 3.  In addition, it contends, future attorneys' fees should be

6  included in the calculation, further supporting the conclusion that the amount at issue exceeds

7  $75,000.  *Id*. at 4 (citing *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998);

8  *Manguno v. Prudential Prop. & Ca. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002)).

9    Farina also argues that the Court may look at any evidence the parties may present as to the

10  amount in controversy and is not limited to the allegations in the complaint.  *Id*. at 5-6.  According

11  to Farina, "there is considerably more than $75,000 here at issue - given the two (2) cases that are

12  now before [the Court], and the history of these cases, to date."  *Id*. at 6.

13    Farina argues that the Motion to Remand also is untimely because it was not filed within

14  thirty days of service of the notice of removal.  *Id*. at 7 (citing 28 U.S.C. § 1447(c)).

15    Farina argues that the amount in controversy must also take into account the fact that 700

16  Valencia is seeking forfeiture of the Lease.  *Id*.  Because the Lease included an option to extend

17  for five years, Farina argues, the period of unlawful possession, which is the measure of damages

18  in an unlawful detainer case, is five years rather than five months.  *Id*.  As a consequence, it

19  contends, the rental value during the period of unlawful possession is more than $529,000.  *Id*.

20  Farina also notes that to the extent 700 Valencia argues that counterclaims may not be considered

21  to determine the amount in controversy, "[t]here is. . . case authority holding that a compulsory

22  Counterclaim is indeed part of the 'amount in controversy' for diversity jurisdiction purposes . . .

23  ."  *Id*. at 6 (citing *Spectacor Management Group v. Brown*, 131 F.3d 120 (3d Cir. 1997)).

24

25    **B.    Legal Standards Governing Amount in Controversy Requirement in Removed
          Cases**

26    Federal courts have limited subject matter jurisdiction, and may only hear cases falling

27  within their jurisdiction.  Generally, a defendant may remove a civil action filed in state court if

28  the action could have been filed originally in federal court.  28 U.S.C. § 1441.  The removal

1   statutes are construed restrictively so as to limit removal jurisdiction.  *Shamrock Oil & Gas Corp.*

2   *v. Sheets*, 313 U.S. 100, 108−09 (1941).  The Ninth Circuit recognizes a "strong presumption

3   against removal."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks

4   omitted).  Any doubts as to removability should be resolved in favor of remand.  *Matheson v.*

5   *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  The defendant bears the

6   burden of showing that removal is proper.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th

7   Cir. 2004).

8       Federal courts have diversity jurisdiction only where there is complete diversity of

9   citizenship—no plaintiff is a citizen of the same state as any defendant—and the amount in

10   controversy exceeds $75,000.  28 U.S.C. § 1332; *see, e.g.*, *Matao Yokeno v. Sawako Sekiguchi*,

11   754 F.3d 649, 652 (9th Cir. 2014).  Where a defendant removes an action to federal court on the

12   basis of diversity, the burden on a plaintiff seeking remand under 28 U.S.C. § 1447(c) depends on

13   whether or not the amount in controversy is clear from the face of the complaint.  *See Guglielmino*

14   *v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  "[W]here it is unclear or ambiguous

15   from the face of a state-court complaint whether the requisite amount in controversy is pled," the

16   preponderance of the evidence standard applies.  *Id.* (citing *Sanchez v. Monumental Life Ins. Co*.,

17   102 F.3d 398, 404 (9th Cir. 1996)).  "The amount is 'determined at the time the action

18   commences, and a federal court is not divested of jurisdiction . . . . if the amount in controversy

19   subsequently drops below the minimum jurisdictional level.'"  *Richardson v. Servicemaster Glob.*

20   *Holdings Inc.*, No. C 09-4044 SI, 2009 WL 4981149, at *2 (N.D. Cal. Dec. 15, 2009)(quoting *Hill*

21   *v. Blind Indus. and Servs. of Md.*, 179 F.3d 754, 757 (9th Cir.1999)).

22          **1.  Timeliness of Motion to Remand**

23       Farina contends 700 Valencia's Motion to Remand is untimely, citing 28 U.S.C. § 1447(c).

24   That section provides that "[a] motion to remand the case on the basis of any defect *other than*

25   *lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of

26   removal under section 1446(a)." 28 U.S.C. § 1447(c) (emphasis added).  The section goes on to

27   provide that the district court may remand a removed case "at any time before final judgment" if it

28   appears that the court lacks subject matter jurisdiction.  *Id.*  Because 700 Valencia asks the Court

United States District Court
Northern District of California

1   to remand the September 22 Unlawful Detainer Action on the basis that the Court lacks subject

2   matter jurisdiction, the thirty day limit in Section 1447(c) does not apply here.

3   **2.   Whether Amount in Controversy Requirement is Satisfied**

4   In the September 22 Unlawful Detainer Action, 700 Valencia seeks the fair rental value of

5   the property for the period of wrongful possession, an award of attorneys' fees and forfeiture of

6   the Lease.  While the first two items likely are not sufficient to meet the amount in controversy

7   requirement, that requirement is undoubtedly satisfied when the value of the leasehold is taken

8   into account.

9   At the time the September 22 Unlawful Detainer Action was filed, the period of unlawful

10   possession was 144 days.  Based on the fair rental value stated in the Complaint of $280/day

11   (which Farina has not challenged), the damages at the time the action was initiated were

12   approximately $40,320.  Farina points to the attorneys' fees that it had incurred as of August 31,

13   2015 (which by themselves exceed $75,000) but offers no authority for including these fees to

14   determine whether the amount in controversy requirement is met in the September 22 Unlawful

15   Detainer Action.  The Court concludes that they may not be considered because they were

16   incurred in a separate action, before the September 22 Unlawful Detainer Action was even filed.

17   Moreover, to the extent fees may be considered to determine whether the amount in controversy

18   has been met in the September 22 Unlawful Detainer Action, it is the attorneys' fees 700 Valencia

19   is seeking – that is – its *own* attorneys' fees, not Farina's, that are relevant to this question.  As to

20   700 Valencia's attorneys' fees in the Unlawful Detainer action, there is no evidence that they were

21   substantial enough at the time the action was initiated to bring the amount in dispute up to

22   $75,000.  Even assuming the Court were to include *future* attorneys' fees in the calculation, it is

23   questionable whether the amount in controversy requirement would be satisfied given the

24   summary nature of unlawful detainer proceedings.[8]

25   _____

26   [8]The Ninth Circuit has held that "where an underlying statute authorizes an award of attorneys'
fees, either with mandatory or discretionary language, such fees may be included in the amount in

27   controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  It has not,
however, addressed "whether the amount-in-controversy determination should include only those

28   attorneys['] fees incurred as of the time of removal, or may properly take into account fees likely
to be incurred through the conclusion of the case"  and district courts in this Circuit are split on the

United States District Court
Northern District of California

1    What 700 Valencia has failed to take into account is the value of the Lease.  When a

2    plaintiff in an unlawful detainer action seeks possession of rented property *and* forfeiture of a

3    lease, the amount in controversy includes not just the damages arising from wrongful possession,

4    but also the value of the leasehold.  *Bally Total Fitness Corp. v. Contra Costa Retail Ctr*., 384

5    B.R. 566, 571 (Bankr. N.D. Cal. 2008).  Thus, in *Bally Total Fitness*, the court rejected a

6    landlord's argument that its unlawful detainer action against its tenant must be remanded to state

7    court because the amount in controversy requirement was not met.  384 B.R. at 571.  The court

8    explained:

> Landlord also disputes Bally's contention that the Unlawful
> Detainer Action satisfies the minimum dollar amount for diversity
> jurisdiction. At present, the minimum dollar amount for actions
> prosecuted in federal court based on diversity jurisdiction is
> $75,000. 28 U.S.C. § 1332(a). Landlord notes that, under California
> law, the damages sought in an unlawful detainer action are limited
> to those directly related to the unlawful detention of the real
> property in question. See *Vasey v. California Dance Co*., 70
> Cal.App.3d 742, 748, 139 Cal.Rptr. 72 (1977). Landlord presumably
> contends that these are minimal.
>
> Landlord's argument reads the minimum dollar amount requirement
> for jurisdiction too narrowly. For purposes of diversity
> jurisdiction, the measure of the dollar amount in controversy is not limited to the
> amount of recoverable damages. When the action seeks recovery
> of a leasehold, the value of the leasehold must be taken into account.
> Several courts have found the appropriate dollar amount in such
> actions to be at least one year's rent. See *Mutual First, Inc. v.
> O'Charleys of Gulfport, Inc*., 721 F.Supp. 281, 283 (S.D.Ala.1989).
> See also *Swords to Plowshares v. Kemp*, 423 F.Supp.2d 1031, 1037,
> fn. 6 (N.D.Cal.2005)(denying remand of unlawful detainer action
> removed based on federal question jurisdiction and citing *Mutual
> First* with approval).

21   *Id.*  Because the monthly rent in that case was $25,687, the court denied the landlord's motion to

22   remand, finding that more than $75,000 was at issue in the case.  *Id.*

23   *Bally* is directly on point.  700 Valencia seeks not only possession of the property but also

24   forfeiture of the Lease.  Using the measure adopted in *Bally*, which estimated the value of the

---

question.  *Byorth v. USAA Cas. Ins. Co.*, No. CV 15-51-BLG-SPW-CSO, 2015 WL 5022899, at
*4 (D. Mont. Aug. 21, 2015) report and recommendation adopted, No. CV 15-51-BLG-BMM,
2015 WL 5692749 (D. Mont. Sept. 28, 2015) (listing cases).  The undersigned need not decide this
question because it finds that the amount in controversy requirement is satisfied on other grounds.

United States District Court
Northern District of California

leasehold as one year's rent, the value of the leasehold exceeds $75,000.[9]  Arguably, the value of the Lease is significantly higher in light of the fact that Farina will lose the option to extend the Lease at the current rental rate if the Lease is forfeited, as 700 Valencia requests.

The Court rejects 700 Valencia's reliance on cases that have held that the value of a property has no bearing on the amount in controversy in an unlawful detainer action. *See, e.g.,* *Moab Investment Group LLC v. Moreno*, 2014 WL 1651939, at *1-2 (N.D. Cal. Feb. 6, 2014); *Litton Loan Servicing v. Villegas*, 2011 WL 204322, at *2 (N.D. Cal. Jan. 11, 2011);  *Bank of America v. Arriola*, 2012 WL 1996954, at *3 (N.D. Cal. Jun. 4, 2012).  While undoubtedly true, Farina is not relying on the value of the property to satisfy the amount-in-controversy requirement. Therefore, these cases are not on point.  Further, 700 Valencia's reliance on the fact that the value of the leasehold may reflect Farina's damages on a possible counterclaim is misplaced.  The Court has found no authority suggesting that in determining  whether the amount-in-controversy requirement is met, it may not consider the value of the leasehold as to which  an unlawful detainer plaintiff seeks forfeiture if that amount would also reflect the damages the unlawful detainer defendant might seek if it were to assert a counterclaim.  Nor does the Court find that there is any justification for applying such an approach. It is clear from the face of the September 22 Unlawful Detainer complaint that 700 Valencia is seeking forfeiture of the Lease and therefore it is proper for the Court to consider the value of the leasehold, regardless of any counterclaims (compulsory or not) Farina might assert.

Based on the value of the alleged unlawful possession of the property and the value of the Lease, the Court finds that the amount in controversy in the September 22 Unlawful Detainer Action exceeds $75,000 and therefore DENIES 700 Valencia's Motion to Remand.

## IV.    THE MOTION TO COMPEL ARBITRATION

### A.    Contentions of the Parties

700 Valencia argues that the Arbitration Clause in the Lease requires arbitration of

---

[9] The rent schedule in the Lease reflects that the rental rate from 2010 to 2013 was $8,000/month and the rate for 2013 to 2015 was $8,400/month.  Even if the Court uses the lower amount, the value of the leasehold would be $96,000 using the year-of-rent measure.

Farina's claims.  Motion to Compel at 2. The Arbitration Clause, found in Section 59 of the Lease, is entitled "Dispute Resolution."  *See* Dkt. No. 43-1 (Bohachek Opp. Decl.), Ex. 1A (Lease Agreement).  The provision contains two subsections relating to arbitration, misnumbered 58.2 and 58.3.[10]  They provide, in relevant part, as follows:

> 58.2  ARBITRATION OF DISPUTES:  The parties agree that any dispute or claim arising between them out of this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, subject to 58.3, below.  The arbitrator . . . shall render an award in accordance with substantive California law.  In all other respects, the arbitration shall be conducted in accordance with Part III, Title 9 of the California Code of Civil Procedure.  Judgement [sic] upon the award of the arbitrator(s) may be entered in a court having jurisdiction.  The parties shall have the right to discovery in accordance with Code of Civil Procedure Sec. 1283.05.
>
> 58.3 EXCLUSIONS FROM MEDIATION AND ARBITRATION:  The following matters are excluded from mediation and arbitration hereunder:  . . . (b) an unlawful detainer action; . . .The filing of a court action to enable the recording of a notice pending action, for order of attachment, receivership, injunction or other provisional remedies shall not constitute a violation of the mediation and arbitration provisions. . . .

*Id*.  700 Valencia argues that the arbitration clause is valid and enforceable and that Farina's first four claims (Declaratory Relief, Specific Performance of Written Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Breach of Construction Contract/ Construction Defects) are subject to arbitration under Section 58.2.  *Id*. at 3-9.

As to the Declaratory Relief claim, 700 Valencia argues that declaratory relief is not a "provisional remedy" and therefore does not fall within the exclusion of Section 58.3.  *Id*. at 5-6. Nor does the request for an injunction in the prayer convert Farina's FAC into an action for a provisional remedy within the meaning of the Lease exclusion, 700 Valencia contends.  *Id*. at 6-7. 700 Valencia also argues that the Court should exercise its discretion to dismiss the Declaratory Relief claim because it relates to "an accrued cause of action for an actual breach of contract or other wrongful act."  *Id*. at 7 (citing *Osseous Technologies of Am., Inc. v. Discovery Ortho*

---

[10] Section 58.1 requires that parties attempt to mediate their disputes before seeking arbitration or filing any court action.  A party who fails to comply with this requirement may not recover attorneys' fees, "even if they would otherwise be available to that party in any such action."

*Partners, LLC*, 191 Cal. App. 4th 357, 366 (2010)).  According to 700 Valencia, Farina has already breached the Lease by failing to timely pay rent and its claim for Declaratory Relief is merely an attempt to delay state court unlawful detainer proceedings or required arbitration.  *Id*. at 7.

With respect to the Breach of Construction Contract/ Construction Defects claim, 700 Valencia argues that the arbitration provision in the Lease applies because arbitration clauses that require arbitration of  all disputes "arising out of" a contract are construed broadly in favor of arbitration by both California courts and the Ninth Circuit.  *Id*. at 7-8.  700 Valencia further contends the claim fails as a matter of law because, under Section 17 of the Lease, Farina agreed to accept the premises "as is."  *Id*.  at 8;  *see also* Bohachek Opp. Decl., Ex. 1A, Section 17 ("TENANT accepts the Premises in an 'as is' condition on the date the Term commences and LANDLORD shall have no obligation to improve, alter, remodel or otherwise remodel the Premises prior to the TENANT's occupancy").  On this basis, 700 Valencia argues that this claim should be dismissed for failure to state a claim if the Court finds that the claim is not subject to arbitration.  *Id*. at 8-9.

700 Valencia argues that if the Court compels arbitration as to Farina's first four claims, the action should be dismissed rather than stayed because "all of Plaintiff's claims fall within the ambit of the Lease Arbitration Agreement and there would be no efficiency created by allowing the case to linger on the docket."  *Id*. at 9.  700 Valencia further contends that the one remaining claim for which it does not seek arbitration, for Return of Security Deposits, should be dismissed because the amount in controversy on that single claim is less than $75,000.  *Id*.  700 Valencia also argues that the Return of Security Deposits claim fails to state a claim because Farina has not pled any facts establishing that it was a third-party beneficiary as to the security deposits that it alleges it paid on behalf of the chefs and managers who lived in the apartment units at issue.  *Id*. at 9-10.

Finally, 700 Valencia seeks attorneys' fees on the Motion to Compel, arguing that the Attorneys' Fees provision, Section 58, entitles any party "forced to compel arbitration" to an award of "reasonable attorneys' fees."  *Id*. at 10.  700 Valencia seeks $4,275 in fees for 9.5 hours

United States District Court
Northern District of California

of work on the Motion to Compel, at a rate of $450/hour.  *Id*.

Farina argues that the Arbitration Provision does not apply to its Breach of Contract Action because Section 58.3 expressly excludes actions for injunctive relief.  Opposition at 3.  Because Farina is seeking such relief, it contends, the Court should not order any of its claims to arbitration.  *Id*.

Farina further contends that under California law (which the parties agreed in the Lease is the applicable law), the Court has discretion to deny arbitration where there is a possibility of conflicting rulings on common issues of law or fact.  *Id*. at 3-4 (citing Cal. Code Civ. Proc. § 1281.2(c)).  There is such a possibility here, according to Farina, both because of the overlap between the September 22 Unlawful Detainer Action and the Breach of Contract Action (which Farina asserts should be heard in a single forum) and because the September 22 Unlawful Detainer Action names as defendants several individuals who are not signatories to the Lease and therefore, are not required to arbitrate their claims at all.  *Id*. at 5-6.  Farina notes that the Federal Arbitration Act ("FAA") does not preempt the California Arbitration Act when the parties have expressly agreed to apply California law and therefore, the Court may deny arbitration under California law even if it might order arbitration under the FAA.  *Id*. at 4 n. 2

Farina argues the Breach of Construction Contract/ Construction Defects claim is not arbitrable, citing California Code of Civil Procedure sections 337.15 and 12987.7, "holding that damages for Construction Defects must be awarded by a Court and not by an Arbitrator."  *Id*. at 6.  Farina also argues that 700 Valencia's challenge to that claim based on the "as-is" provision in the Lease "makes absolutely no sense" because "Plaintiff leased an empty shell from defendant and itself built out the restaurant – with [700 Valencia] serving as General Contractor."  *Id*.

Finally, Farina asserts that 700 Valencia waived any right it may have had to seek arbitration by waiting five months to invoke the arbitration clause.  *Id*. at 6-7.  Farina has not addressed 700 Valencia's arguments that Farina fails to state a claim for Breach of Construction Contract/Construction Defects or Return of Security Deposits.

**B.     Whether the Motion to Compel is Governed by the FAA or the California Arbitration Act**

In the Motion to Compel, 700 Valencia invokes both the FAA, 9 U.S.C. § 1 *et seq.,* and the California Arbitration Act ("CAA"), California Code of Civil Procedure section 1281.1. 700 Valencia asserts it is unclear from the terms of the Lease whether federal or state arbitration law applies but that under either, Farina's action must be arbitrated.  *See* Motion at 3-4 ("[w]hether the Court applies the FAA or the [CAA], the result is the same:  Plaintiff must arbitrate its claims"); *see also* Reply at 8 (noting that "700 Valencia . . . has not made a determination that the California Arbitration Act applies to determination of the motion to compel" and asserting that because "it is not clear which Arbitration Act controls determination of the Motion to Compel, cases examining waiver under the FAA are also instructive.").

In fact, it is not obvious that the result will be the same under either state or federal law. In particular, California and federal cases have found that although there is no comparable provision under the FAA, the court may deny arbitration under California Code of Civil Procedure section 1281.2 – even if a different result would be reached under the FAA – if the parties have "agreed to arbitrate in accordance with California law."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 477 (1989);  *see also Mount Diablo Med. Ctr. v. Health Net of California, Inc*., 101 Cal. App. 4th 711, 718 (2002) ("[d]espite the apparent inconsistency between section 1281.2(c) and the FAA, the United States Supreme Court gave its blessing to section 1281.2(c) in *Volt*").

Under federal law, there is a presumption that the arbitrator determines whether there has been a waiver.  *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (U.S. 1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").  On the other hand, California Code of Civil Procedure section 1281.2(a) permits the court, rather than the arbitrator, to determine whether the right to arbitrate has been waived by the petitioner.  Cal. Civ. Proc. Code § 1281.2 ("On petition of a party to . . . .  arbitrate a controversy  . . . *the court* shall order the petitioner and the respondent to arbitrate the controversy if it determines that an

United States District Court
Northern District of California

agreement to arbitrate the controversy exists, unless it determines that . . . [t]he right to compel arbitration has been waived by the petitioner") (emphasis added).  Pursuant to this section, California courts routinely decide the question of whether a party has waived its right to enforce an arbitration clause.  *See, e.g., Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 445 (2012), as modified (Apr. 25, 2012);  *Adolph v. Coastal Auto Sales, Inc.*, 184 Cal. App. 4th 1443, 1452 (2010);  *Guess?, Inc. v. Superior Court*, 79 Cal. App. 4th 553, 558 (2000)*;  Kaneko Ford Design v. Citipark, Inc.*, 202 Cal. App. 3d 1220, 1228 (1988).  Thus, where the parties have agreed that California law will apply to their agreement to arbitrate, the presumption that the arbitrator will decide the question of waiver is overcome.  *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989).

Similarly, California Code of Civil Procedure section 1281.2(c) allows the court to deny a petition to compel arbitration on the basis that there is "a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."  Cal. Civ. Proc. Code § 1281.2 (c).   As noted above, under *Volt,* courts may apply this rule, even if the FAA contains no such provision, if the parties have agreed that California law will apply to their arbitration agreement.

Here, the language of the Arbitration Provision in the Lease could not be clearer:  the parties expressly cited to the CAA in Section 58.2, stating that "the arbitration shall be conducted in accordance with Part III, Title 9 of the California Code of Civil Procedure."  Thus, the Court applies the CAA in evaluating 700 Valencia's arguments in accordance with the terms of the parties' agreement.

**C.     Whether 700 Valencia has Waived its Right to Seek Arbitration Under the Lease**

Under California law, like federal law, there is a strong public policy favoring arbitration.  *Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 443 (2012), as modified (Apr. 25, 2012) (citing *St. Agnes Medical Center v. PacifiCare of California*, 31 Cal.4th 1187, 1204 (2003);  *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339  (2011)).  Notwithstanding this policy, however, under both federal and California law, courts may refuse to enforce an arbitration

agreement where the party seeking to compel arbitration has waived the right to arbitrate.  *Id.* (citing 9 U.S.C. § 2; Cal. Code Civ. Proc. § 1281; *St. Agnes*, 31 Cal. 4th at 1195).  In *St. Agnes*, the California Supreme court adopted the standard applied to waiver by federal courts, setting forth the following factors courts should consider to determine whether the right to arbitrate has been waived:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th at 1196 (quoting *Sobremonte v. Superior Court*, 61 Cal.App.4th 980, 992 (1998) (quoting *Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 467-68 (10th Cir.1988))) (internal quotations omitted).  In general, the determination of whether a waiver has occurred is a question of fact.  *Id.*

Under the facts here, the Court finds that 700 Valencia unreasonably delayed in seeking arbitration, that its conduct was inconsistent with the right to arbitrate, and that its failure to notify Farina of its intent to seek arbitration was misleading and resulted in prejudice to Farina.  As discussed above, almost four and a half months elapsed between the time Farina filed its complaint in the Breach of Contract Action and the time it filed the Motion to Compel.   California courts have routinely found that comparable periods were unreasonable where the specific facts showed that the delay caused prejudice to the other side.  *See, e.g., Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 445 (2012), as modified (Apr. 25, 2012) (four months delay found was unreasonable); *Guess?, Inc. v. Superior Court*, 79 Cal. App. 4th 553, 558 (2000) (three month delay was unreasonable);  *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal.App.3d 1220, 1228-29(1988) (five and a half month delay found unreasonable).

Moreover, 700 Valencia has engaged in conduct inconsistent with an intent to arbitrate.  First, it filed a motion to dismiss challenging Farina's capacity to sue.  Although Farina's counsel

19

informed 700 Valencia's counsel before the motion was filed that he was in the process of

addressing the issues that were the subject of the motion and that these issues might be resolved

without the need for motion practice, 700 Valencia's counsel went ahead with the motion, thus

taking "full advantage of the opportunity to test the validity of [Farina's] claims, both legally and

factually, primarily at [Farina's] expense." *See Guess?*, 79 Cal. App. 4th at 558;  *see also*

*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 105 Cal. App. 3d 946, 951 (1980)

(explain that filing demurrers or motions for summary judgment before seeking to enforce an

agreement to arbitrate is "like testing the water before taking the swim" and therefore may result

in waiver of the right to arbitrate).

    In the meantime, 700 Valencia participated in discovery, negotiating an agreement with

Farina's counsel containing deadlines for specific production by both sides, without making any

mention of 700 Valencia's intent to seek arbitration.  To the contrary, counsel for 700 Valencia

stated in open court that it would work with Plaintiff's counsel to ensure that all of the parties'

disputes were properly before this Court.  Farina's counsel, understandably believing that the

Breach of Contract Action would be decided in this Court, engaged in vigorous efforts to obtain

the discovery to which he believed Farina was entitled under the parties' earlier agreement.

California courts consider such efforts to support a finding of waiver even if the party seeking

arbitration did not itself seek discovery.  *See Lewis v. Fletcher Jones*, 205 Cal. App. 4th at 449.

Here, however, 700 Valencia also accepted discovery as part of its agreement with Farina.

    Finally, 700 Valencia allowed Farina to file an amended complaint and, by including

irrelevant attacks on the merits in its Motion to Remand, elicited additional information about

Farina's litigation strategy.

    In sum, as a result of 700 Valencia's conduct Farina has had to engage in substantial

discovery efforts,  motion practice and formal amendment of its pleadings, thus "los[ing] whatever

efficiencies that would otherwise have been available to it through arbitration." *See Guess?*, 79

Cal.App.4th  at 558.  Further, during the four months the case has been pending Farina has

exposed its litigation tactics and 700 Valencia has been able to "test the waters" by filing a motion

to dismiss, on which the Court has ruled.  For these reasons, the Court finds that 700 Valencia has

1    waived any right it may have had to compel arbitration under the Lease.[11]

2
3    **D.    Whether the Return of Security Deposits Claim Should be Dismissed for Failure to Adequately Allege that Farina is a Third-Party Beneficiary**

4         700 Valencia challenges Farina's claim for return of security deposits on the basis that

5    Farina has alleged no facts showing that it is a "third party beneficiary" of the lease agreements

6    between 700 Valencia and the individuals who leased unit numbers 1 and 8 of the building;

7    according to the FAC, Farina paid the security deposits on those units but the leases were in the

8    names of the individuals who lived there.  FAC ¶ 31.  Those individuals were allegedly "personnel

9    affiliated with plaintiff."  *Id*.  Under California law, "a third party may qualify as a beneficiary

10   under a contract where the contracting parties must have intended to benefit that third party and

11   such intent appears on the terms of the contract."  *Jones v. Aetna Cas. & Sur. Co*., 26 Cal. App.

12   4th 1717, 1724 (1994) (citing *Ascherman v. General Reinsurance Corp*., 183 Cal.App.3d 307, 311

13   (1986)).   The Court finds that Farina's allegations are sufficient to state a claim and therefore

14   rejects 700 Valencia's request that the Court dismiss the Return of Security Deposits Claim at the

15   pleading stage.  700 Valencia may, of course, renew its challenge on summary judgment, after the

16   factual record has been developed.

17   **E.    Whether the Breach of Construction Contract/ Construction Defects Claim Should be Dismissed on the Basis Farina Agreed to Accept the Premises "as is."**

18
19        700 Valencia asks the Court to dismiss Farina's claim for Breach of Construction

20   Contract/Construction Defects because Farina agreed in the Lease to accept the premises "as-is."

21   700 Valencia fails to explain how the "as-is" clause applies to Farina's claim, which is based on a

22   separate oral agreement allegedly entered into after the Lease was signed.  Nor has 700 Valencia

23   cited to any authority in support of its position.  Therefore, 700 Valencia's request to dismiss this

24   claim for failure to state a claim is denied.

25
26
27   _____

     [11] Because the Court finds that the right to seek arbitration has been waived, the Court need not reach the question of whether 700 Valencia's request for arbitration should be denied under
28   California Code of Civil Procedure section 1281.2(c), based on the possibility of inconsistent outcomes.

United States District Court
Northern District of California

## V.     THE MOTION TO CONSOLIDATE

Under Rule 42 of the Federal Rules of Civil Procedure, a court may consolidate actions involving common questions of law or fact.  Consolidation is "merely an expedient which promotes convenience and economy in judicial administration because it enables a single trial of several causes involving the same issues or overlapping issues to be had."  *Nat'l Nut Co. of Cal. v. Susu Nut Co.,* 61 F. Supp. 86, 88 (N.D. Ill. 1945) (citation omitted).  Because both the Breach of Contract Action and the September 22 Unlawful Detainer case are before the undersigned and the two cases have already been related, however, it does not appear that there is a need to consolidate these two cases to ensure that discovery is coordinated and to allow for a single trial.   Therefore, the Motion to Consolidate is DENIED without prejudice to revisiting this question at the upcoming Case Management Conference.

## VI.     CONCLUSION

For the reasons stated above, 700 Valencia's Motion to Compel and Motion to Remand are DENIED.  Farina's Motion to Consolidate is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: February 10, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge